**DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee FOR MORGAN STANLEY HOME EQUITY LOAN TRUST 2005–3 (MSHEL 2005–3), Plaintiff–Respondent,**

v.

**Enoch and Karen PYLE, Defendants–Appellants,**

and

**Homeland Capital Group, LLC, Defendant.**

### No. SD34133

Missouri Court of Appeals,
Southern District,
**Division One.**

Filed: March 28, 2017

Motion for Rehearing and/or Transfer to Supreme Court Denied April 18, 2017

Application for Transfer Denied June 28, 2017

808

ROBERT M. SWEERE, Springfield, MO, for Appellants.

TRENTON K. BOND, Clayton, MO, for Respondent.

DON E. BURRELL, J.

Enoch and Karen Pyle ("Homeowners"), husband-and-wife defendants in the underlying case, appeal the September 2015 declaratory judgment that quieted title in Homeowners to certain property in Steeplechase Estates, an Ozark subdivision ("the Property"), but also declared the Property subject to a first-priority encumbrance for the deed of trust ("Deed of Trust") assigned to Deutsche Bank National Trust Company, as Trustee for Morgan Stanley Home Equity Loan Trust 2005-3 ("Bank"). The judgment also declared a recorded copy of the Deed of Trust to be "a true, accurate, and authentic copy of the original," and it taxed the costs of the action against Homeowners.[1]

Well after the litigation commenced, Homeowners were granted leave to file counterclaims against Bank. One of these "counterclaims" ("HCC 1") relied on section 514.205[2] in claiming that Bank had pursued its action frivolously and in bad faith. On the morning of trial, after the jury had been selected but before the presentation of evidence had commenced, the trial court dismissed HCC 1 and determined that the selected jury would stay on as "an advisory jury pursuant to Rule 73.01."[3]

Homeowners present nine points on appeal. Point 1 contends the trial court erred in dismissing HCC 1 because Homeowners

---

1. The judgment also declared a lien of defendant Homeland Capital Group, LLC, ("Homeland") to be "junior and inferior" to Bank's Deed of Trust. The judgment found that Homeland had been "duly served" in the case but failed to file a pleading or appear at the trial. Homeland has not filed a brief in this appeal, and Homeowners attach no significance to Bank's allegations or the judgment's findings regarding Homeland.

2. All statutory references are to RSMo 2000. All rule references are to Missouri Court Rules (2016).

3. The counterclaims included a second count ("HCC 2") that sought punitive damages based upon Bank's alleged malicious litigation "after August of 2013[.]" Before trial, "a stay of discovery on [HCC 2]" was ordered "[u]ntil there has been a disposition of [Bank's] claim[.]" The trial court reasoned that until Bank's claim was resolved, the trial court "lack[ed] jurisdiction to proceed on [HCC 2]." The judgment makes no express reference to HCC 2, but because the judgment was in Bank's favor on Bank's "Amended Petition to Quiet Title and For Other Relief" ("the petition"), the judgment implicitly denied HCC 2. Thus, we regard the judgment as final for purposes of appeal. See Rule 74.01(b) and *Jefferson v. Am. Fin. Grp., Inc.*, 163 S.W.3d 485, 487 n.2 (Mo. App. E.D. 2005).

had a cause of action under section 514.205 for money damages resulting from their opposition to Bank's "frivolous" litigation. Point 2 contends that Homeowners "have a constitutional right to a trial by jury on all statutory actions for damages." Point 3 contends the trial court erred in denying Homeowners a jury trial on Bank's claim. Point 4 challenges the denial without a hearing of Homeowners' after-trial motion that also asserted claims under section 514.205 ("the frivolous-suit motion"). Points 5, 6, and 7 challenge the admission of certain photocopies of documents as Bank's exhibits 1, 3, and 5, and each alleges that "legally false impression[s]" resulted from their admission.[4] Point 8 claims the trial court erred in permitting Bank "to challenge a juror after [Homeowners] had announced their challenges" in violation of section 494.480, which directs that a plaintiff's challenges be made first. Point 9 claims the judgment was not supported by substantial evidence and was against the weight of the evidence because "there was no competent evidence in the record that the alleged photocopy of [the Deed of Trust] ... was a true, accurate, and authentic copy of the original[.]" (Quotation omitted.) Finding no merit in any of Homeowners' points, we affirm.

## Applicable Principles of Review

We "will affirm a trial court's judgment in a court-tried case unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Hunter v. Moore*, 486 S.W.3d 919, 925

(Mo. banc 2016). The same standard applies when a case is tried to an advisory jury. *Rhodes v. Hunt*, 913 S.W.2d 894, 898 (Mo. App. S.D. 1995). In cases tried with an advisory jury, "the trial court is the ultimate trier of fact and [it] may adopt or reject the verdict or findings of the advisory jury according to the court's view of the facts." *Mason v. Wal–Mart Stores, Inc.*, 91 S.W.3d 738, 741 n.1 (Mo. App. W.D. 2002). Thus, an appellate court still defers "to the trial court's determinations of credibility, and views all evidence in the light most favorable to the trial court's judgment and disregards all contrary evidence." *Pitman Place Dev., LLC v. Howard Inv., LLC*, 330 S.W.3d 519, 526 (Mo. App. E.D. 2010); *see also Rhodes*, 913 S.W.2d at 902.

"The determination of whether a sufficient foundation was laid for admission of the evidence is within the sound discretion of the trial court." *Healthcare Serv. of the Ozarks, Inc. v. Copeland*, 198 S.W.3d 604, 616 (Mo. banc 2006) (quotation omitted). The admission of evidence is reviewed for prejudice, not mere error. *Teasdale & Assoc. v. Richmond Heights Church of God in Christ*, 373 S.W.3d 17, 24 (Mo. App. E.D. 2012). "A trial court has broad discretion when ruling upon a complaint that proffered documentary evidence violates the best evidence rule, and the court's decision is subject to reversal only in cases of clear abuse." *Christian Health Care of Springfield W. Park, Inc. v. Little*, 145 S.W.3d 44, 53 (Mo. App. S.D. 2004). "We will not reverse unless the erroneous admission of evidence was so prej-

---

4. Exhibit 1 is a copy of a "pooling and servicing agreement." Exhibit 3 is a copy of an adjustable rate note, and Exhibit 5 consists of three documents: a recorder of deeds certificate, an affidavit regarding a "lost mortgage[,]" and a deed of trust. "Although deeds of trust and mortgages are somewhat different methods of financing, a deed of trust is

often referred to as a 'mortgage' in Missouri." 6 Eric Zeigenhorn, *Missouri Practice Series*, *Legal Forms* § 3:121 (3d ed. July 2016 update). As a result, the trial court could reasonably find that references to a "mortgage" were intended to refer to, or at least include, a deed of trust.

udicial that it deprived the defendant of a fair trial, and we find a reasonable probability that the evidence affected the outcome of the trial." *Teasdale*, 373 S.W.3d at 24.

## Relevant Evidence and Procedural Background[5]

Homeowners purchased the Property and borrowed money in 2004 to construct a house on it. In March 2005, Homeowners obtained "permanent financing" for the Property. In May 2005, Homeowners refinanced the second loan with a third ("the Loan").

Portions of the depositions of Homeowners were read into evidence. In those portions, Mr. Pyle recalled that he and Mrs. Pyle were present for the closing on the Loan, which was held at their house, but he could not recall the name of the man who handled the closing. Mr. Pyle thought he "had documentation" about the closing at the time it occurred, but he did not keep "a single copy[.]" Mr. Pyle did not recall looking at the documentation even though he knew that he should have, but he did not do so because he had borrowed money before. He commented, "'[It] seems like the more I do it, the faster it goes. Because I think, okay, I've done this before. Bang-bang and, you know, you're out of there.'" Mr. Pyle acknowledged at trial that he "sign[ed] papers" at the closing, and he and his wife received about $34,000 in cash as a result of the Loan.

In her deposition, Mrs. Pyle recalled that she signed documents at the closing, but she did not "review them prior to the closing[.]" In her testimony at trial, Mrs. Pyle said that before she signed the documents, she "briefly[,]" but "not completely" reviewed them, and she acknowledged that

she "could have reviewed them more thoroughly if [she had] wanted to[.]" Mrs. Pyle also testified that she and Mr. Pyle still "reside[d] together at the [P]roperty[.]"

A vice-president of Bank's corporate trust department, Ronaldo Reyes, testified that he had the original adjustable rate note for the Loan dated May 17, 2005 ("the Adjustable Rate Note") with him at trial in a binder. He also testified that he had a copy that was a true and accurate photocopy of the Adjustable Rate Note ("the Note Copy"). The Note Copy identified Mr. Pyle as the borrower and Wilmington Finance as the lender, and the Note Copy was admitted into evidence as Bank's Exhibit 3 as follows:

> THE COURT: Any objection to Exhibit 3?
>
> [HOMEOWNERS' COUNSEL]: Uh, no. I object to 3. It hasn't been identified. That's the note.
>
> THE COURT: It was identified by this witness.
>
> [HOMEOWNERS' COUNSEL]: No. He hadn't—he didn't—he said what it looks like. He read the top of it. In order for a note to be admissible, he has to say who signed it. He didn't ask him that. He just said it's—it's a note.
>
> THE COURT: Well, I'm going to overrule the objection, and I'll admit Exhibit 3.

The Note Copy included the hand-written initials "E.P." at the bottom of the first three pages, a hand-written signature above the typed-name "ENOCH PYLE" on the fourth page, and another hand-written signature above the typed-name "ENOCH PYLE" on a final page entitled "PREPAYMENT RIDER TO NOTE[.]"

---

**5.** Evidence from the August 2015 trial is summarized in the light most favorable to the judgment. *See* ***Pitman Place Dev.***, 330 S.W.3d at 526; ***Rhodes***, 913 S.W.2d at 902.

A photocopy of the U.S. Department of Housing and Urban Development settlement statement ("the HUD statement") dated May 17, 2005, which identified Homeowners as the borrowers, Wilmington Finance as the lender, and Advantage Equity Services ("Advantage") as the settlement agent, was admitted as Bank's Exhibit 17. The HUD statement included hand-written signatures above each of the typed-names "ENOCH PYLE" and "KAREN PYLE[.]"

Portions of a deposition of the former general counsel for Advantage, Sean Bello, were read into evidence. Mr. Bello worked for Advantage in Pennsylvania between 2002 and 2007, and he understood that the company was no longer in business. Mr. Bello recalled that, for areas outside of Pittsburgh, Advantage would use a closing service that had " 'people go to the borrowers [sic] residence.' "

Records from Advantage's internal note-keeping system were admitted into evidence,[6] and the entries from May 19, 2005 stated that Advantage "did not get back the original mortgage or all our [sic] affidavits[,]" and "[w]e got all of the originals with the exception of the mortgage." Additional entries indicated plans to "DOUBLE/TRIPLE CHECK FOR" the "MISSING MORTGAGE" and, if it could not be located, "GET IT RESIGNED."

In June 2005, Bank became the custodian of the Loan as trustee "for the benefit of bond investors[.]" Bank was governed in the management of loans held for this purpose (a category that included the Adjustable Rate Note) by a pooling and servicing agreement. A copy of the pooling and servicing agreement ("Pooling Copy") was admitted as Exhibit 1 over Homeowners' objection that "[i]t's improper to

admit a photocopy when the original is available."

Mr. Reyes testified that Bank's file for this type of loan would "typically include the . . . deed of trust[,]" and, upon receipt, Bank employees would review the physical files for the mortgages. Bank retained these files in a secure room. Mr. Reyes had reviewed the file for Homeowners' mortgage, and he could tell from Bank's records that the file was reviewed in June 2005 when it came into Bank's possession. Bank's file contained the Adjustable Rate Note, but it did not contain the Deed of Trust. Bank's records reflected that when the file was first delivered, Bank received "only . . . a photocopy of—of the mortgage."

Entries from Advantage's records dated July 2005 indicated that a representative from Advantage named "Gayla (abst [sic] from Sparks Searching)" was "to inquire about mtge [sic] recording info[,]" and "Gayla said she thought she verbally gave the info to someone last month but she will check into this & fax back the info[.]" An entry in Advantage's records dated October 31, 2005 states: "This mortgage was never recorded because we never got the orig [sic] back. I called [Mr. Pyle] and left a message that they have to resign a new mortgage. Waiting to hear back from them." An entry dated November 16, 2005 includes: "left another message for [Mr. Pyle] that this is very urgent to get the mortgage signed. i [sic] have the 3rd reaqust [sic] for the mortgage and policy from [W]ilmington."

An entry in Advantage's records from the following day reflects that a "LOST MORTGAGE AFFIDAVIT" ("the lost mortgage affidavit") was drafted for signa-

---

**6.** When Bank offered these records into evidence as Exhibit 18, counsel for Homeowners affirmatively stated that he had no objection, and he stated that he would also "claim" the exhibit on behalf of Homeowners.

ture. Mr. Bello recalled that he executed the lost mortgage affidavit to be recorded " 'if the original mortgage could not be located so as to get a copy of the instrument on the record.' " Two other subsequent entries in Advantage's records indicated that the lost mortgage affidavit and a "COPY OF MORTGAGE" were subsequently sent "FOR RECORDING[,]" and the "COUNTY" requested an additional fee for "A NONSTANDARD DOC."

On December 1, 2005, a set of documents consisting of the lost mortgage affidavit and a copy of a deed of trust were recorded. Copies of these two documents, with each page bearing the same "BOOK" number and consecutive "PAGE" numbers, together with a certified copy of a "RECORDER OF DEEDS CERTIFICATE[,]" were admitted as Exhibit 5 over Homeowners' objections that Exhibit 5 constituted "hearsay thrice removed. It hasn't been properly authenticated. It hasn't been properly identified. It's—it's in violation of the best evidence rule for the Court to allow this exhibit into evidence." We will refer to the copy of the lost mortgage affidavit in Exhibit 5 as the "Affidavit Copy," and the copy of the deed of trust in Exhibit 5 as the "Deed Copy."

Mr. Reyes identified the Deed Copy and the Affidavit Copy as pertaining to the Property based upon the address for the Property listed in the documents. He also testified that the Deed Copy had an execution date of May 17, 2005, it reflected purported signatures of Homeowners, some of its terms referenced information in the Adjustable Rate Note, and the documents all contained the same notary information.

The Affidavit Copy, stated, *inter alia*, that "an employee of [Advantage] did review and prepare the final document . . . for recordation and forwarded it to: Gayla Sparks," but that after "the document" was mailed to "Gayla Sparks, Abstractor," it "subsequently become [sic] lost[.]" The Affidavit Copy stated "[t]hat a due diligent [sic] search of the offices of [Advantage] and the closing office has been made and that the whereabouts of the original Mortgage is unknown." The Affidavit Copy also stated that "[a] 'true certified' copy of the Mortgage from the closing file" was attached for recording.

The Deed Copy reflects hand-written initials on the bottom of each page which vary as to whether periods are used in each instance but otherwise reflect "EP KP" and hand-written signatures above the type-written names "ENOCH PYLE" and "KAREN PYLE" on page 14. Page 15 of the Deed Copy reflects an executed notary acknowledgment that Homeowners appeared and "executed the foregoing instrument[.]" Referenced in the Deed Copy, and attached to it within Exhibit 5, is a photocopy of an "ADJUSTABLE RATE RIDER" ("Rider Copy") that also bears handwritten initials on each page and a set of hand-written signatures above Homeowners' individually-typed names on the next to last page, with the last page being an exhibit to the document that states the legal description for the Property.

In March 2006, Bank received "the certified copy of the deed of trust . . . . [t]hat had been recorded in the county[.]" Payments on the Loan became delinquent, and in July 2008, Mr. Pyle executed a loan modification agreement with the company servicing the loan to set the interest rate at a specified level for a period of time so as to change the payment and bring "the [L]oan current." Copies of letters from the servicing company reflecting a determination that Mr. Pyle had failed to make required payments on the modified loan were admitted into evidence over an objection from Homeowners, but Mr. Pyle admitted at trial that he "quit paying" on the

Loan because "[t]he payment was too high."

A forensic document examiner, Linda James, testified on behalf of Bank. Part of her work relevant to this case involved examining the original signature of Mr. Pyle on a "verification page received in discovery from [Homeowner's] counsel in this case." The verification page was admitted as Bank's exhibit 14A, and the original signature of Mrs. Pyle from another verification page produced with discovery materials was admitted as Bank's exhibit 14B. Ms. James opined that the two signatures represented for Mr. Pyle on the loan modification agreement and two other signatures represented as Mr. Pyle's on the Adjustable Rate Note were genuine and authentic. Ms. James also opined that the signatures of Homeowners on the Deed Copy and the Rider Copy were genuine and authentic.

Bank filed suit in August 2011, and the petition asserted one count for quiet title, citing sections 527.150 and 527.190.[7] The petition alleged that "[t]he fact that [the] Deed of Trust was, and is, lost or destroyed and never placed of record has prevented [Bank] from exercising its rights afforded under [the] Deed of Trust[,]" and Bank "has no adequate remedy at law." As relief, Bank sought: (1) a decree of quiet title to the Property in Homeowners subject to Bank's Deed of Trust; (2) a decree that a copy of the Deed of Trust was a true and authentic copy establishing a "first priority encumbrance on the Property in favor of [Bank]"; (3) an award of Bank's costs and fees incurred in the action; and (4) "such other and further relief" deemed "just and proper." HCC 1 was filed by Homeowners in May 2014,

and Bank's motion to dismiss it was denied in August 2014.

After the jury selection portion of the August 2015 trial had been completed,[8] Bank raised its motion for reconsideration of the trial court's denial of Bank's motion to dismiss HCC 1. After a break in the proceedings, the trial court granted the request. Based on the resulting dismissal of HCC 1, Bank then argued that its case was based solely in equity and should be tried to the court without a jury. The trial court deferred ruling on that issue and ordered that the jury would "hear the case" until the trial court decided the question.

At the beginning of the second day of trial, Homeowners' counsel moved for a mistrial on several grounds, including the denial of "the constitutional right to a trial by jury on" HCC 1 and the presumption that Bank's action was an equitable action where "we may waste three days trying this case to a jury and then not submit it to the jury." The trial court overruled the motion for mistrial, and its reasoning included that: 1) "the action at law was dismissed with the dismissal of [HCC 1]"; and 2) HCC 1 "fails to state a cause of action[.]" The trial court found that the case "now presents a case in equity[,]" but because a jury had already been selected, it would remain "as an advisory jury to make decisions on issues of fact."

After closing arguments and deliberation, the advisory jury unanimously answered interrogatories finding that Mr. Pyle signed the Adjustable Rate Note and Homeowners each signed the Deed of Trust and the Adjustable Rate Rider for the Property. While the case was under

---

7. Sections 527.190 to –527.240 are commonly referred to as the "Lost Deed Law[.]" *Oberkramer v. Brown*, 635 S.W.2d 63, 65 (Mo. App. E.D. 1982).

8. Additional detail about the jury selection process will be included in our analysis of Homeowners' eighth point.

advisement with the trial court, Homeowners filed the frivolous-suit motion seeking "reasonable expenses" from Bank and a judgment of contempt against Bank.

The trial court subsequently entered its judgment (which included findings of fact and conclusions of law) in favor of Bank. The trial court found that Mr. Pyle "executed and delivered" the Adjustable Rate Note. The trial court found that "[c]redible evidence was adduced from [Ms. James] to establish that [Mr.] Pyle's signatures on the Adjustable Rate Note, [the] Deed of Trust, and [Adjustable Rate Rider] are genuine and authentic signatures of [Mr.] Pyle." The trial court made a nearly identical finding as to the credibility of evidence from Ms. James in establishing the genuineness and authenticity of Mrs. Pyle's signatures on the Deed of Trust and. the Adjustable Rate Rider.[9] The trial court concluded that the Deed of Trust "was and is lost" and Bank had "complied with the Lost Deed Law[.]" The judgment decreed that the Deed Copy is "a true, accurate, and authentic copy of the original, and is a true and valid first priority encumbrance on the Property in favor of [Bank], and has been since May 17, 2005."

After entering the judgment, the trial court entered an order denying the frivolous-suit motion and Homeowners' motion for new trial. This appeal timely followed.

## Analysis

For the sake of convenience, we will deal collectively with some of Homeowners' points and take others out of order.

*Point 8—Bank's Peremptory Challenges*

■ Homeowners contend in their eighth point that the trial court "ignored" section 494.480 by allowing Bank "to challenge a juror after [Homeowners] had announced their challenges[.]" Assuming, *arguendo*, that section 494.480 applies to the selection of an advisory jury, the point neither puts the disputed challenge in context nor indicates why a reversal would be necessary if the trial court erred in allowing it. *See* Rule 84.04(d)(1)(B) and (C).

Section 494.480 addresses peremptory challenges in both civil and criminal cases, and subsection 1 provides that "[i]n all cases, the plaintiff shall announce its challenges first." Section 494.465.1 provides for relief from a "substantial failure to comply with the provisions of sections 494.400 to 494.505." Here, Bank's counsel informed the trial court that he "meant to strike" a different juror and he was "not changing [his] mind" but "just correcting a mistake." After allowing Bank to change its earlier-announced challenge, Homeowners were allowed to consult with their counsel, who then informed the trial court that Homeowners would not be changing any of their previously announced peremptory strikes based on Bank's change. Homeowners renewed their objection to permitting Bank's counsel "to change his mind[,]" but they requested no further relief.

Homeowners cite no authority that would compel the trial court to find that Bank's counsel was trying to "change his mind" instead of concluding that Bank's counsel sought to correct its selection to reflect Bank's original choice for a peremptory strike, and Homeowners fail to

**9.** In making the findings regarding Mr. Pyles's signatures on the Deed of Trust and Adjustable Rate Rider, the trial court cited Exhibit 5, which included the Deed Copy and Rider Copy, and we infer from this that the trial court found Homeowners' signatures on

the Deed Copy and Rider Copy to be genuine and authentic. *See **Artilla Cove Resort, Inc. v. Hartley**,* 72 S.W.3d 291, 293 (Mo. App. S.D. 2002) ("permissible inferences consistent with the findings of the trial court are accepted").

demonstrate how allowing Bank to correct its originally-announced peremptory challenge selection rose to the level of a fundamental or a systemic deviation from the jury selection statutes. Point 8 is denied.

### Point 3—No Right to a Jury Trial on the Petition

■ Homeowners' Point 3 contends that Bank's claims "were actions at law ... seeking a determination of title and the establishment of evidence of title" and it was therefore error to deny Homeowners a jury trial on Bank's claims. Bank maintains that its claims "were equitable in nature, and not at law[.]"

■ "The Missouri Constitution provides that 'the right of trial by jury as heretofore enjoyed shall remain inviolate. MO. CONST. art. I, section 22(a). The right to a jury trial in a civil action 'exists in actions at law but not in actions at equity.'" *State ex rel. Barker v. Tobben*, 311 S.W.3d 798, 800 (Mo. banc 2010) (footnote and quotation omitted). "[T]he right to trial by jury attaches only to actions at law for which damages may be awarded, not to suits in equity." *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 352 (Mo. banc 2006). "Whether the action is equitable or at law is determined by reference to the pleadings[.]" *Diehl v. O'Malley*, 95 S.W.3d 82, 92 (Mo. banc 2003). "Equitable remedies are coercive remedies like declaratory judgments and injunctions, the latter of which includes specific performance and some types of restitution. Damages and, in some instances, restitution constitute the legal remedies." *State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 471 (Mo. banc 2004) (citations omitted).

[S]ome cases present mixed issues of law and equity. In those cases, trials should be conducted to allow the legal claims to be tried to a jury, with the court reserving for its own determination only equitable claims and defenses, which it should decide consistently with the factual findings made by the jury. *Barker*, 311 S.W.3d at 800.

■ In terms of the statutes relied on by Bank in its pleadings, "[a] quiet title suit under this section [527.150] is a special statutory action to adjudge the respective title, estate and interests of claimants to land and is an action at law or in equity according to the issues presented by the pleadings." *Massachusetts Gen. Life Ins. Co. v. Sellers*, 835 S.W.2d 475, 482 (Mo. App. S.D. 1992). In *Sellers*, the quiet title action was considered one at law where the parties each claimed title and "the only relief sought was a quiet title decree." *Id.* at 482, 483. But in *Pipes v. Sevier*, 694 S.W.2d 918, 923 (Mo. App. W.D. 1985), the Western District ruled that "[t]he demand for a jury trial was properly refused" where "the petition ... sought no money damages, but only the cancellation of deeds." Similarly, in *Stafford v. Shinabargar*, 336 Mo. 856, 81 S.W.2d 626, 627 (1935), "[t]he only issue presented by the pleadings ... [was] whether or not the deed of trust should be canceled" on the basis of fraud and forgery. The Court in *Stafford* acknowledged that the "plaintiff ask[ed] that the title be quieted in her, but she ask[ed] the court to do so by canceling the note and deed of trust. Such an action is in equity and not at law." *Id.*

The Lost Deed Law[10] traces back to proceedings brought before a court of equity:

---

10. Section 527.190 provides:
 1. Any person or persons claiming an estate or interest in any lands or real estate in this state, and whose deeds,

mortgages, or other written evidence of title or interest, or the record thereof, have been lost or destroyed, may apply by petition to the circuit court of the

When the title to real estate has been vested in a grantee by a deed duly executed and delivered, and such deed has been lost or destroyed without being recorded, a court of equity will lend its aid to protect the rights of the grantee and those claiming under him by enjoining the grantor and his heirs and legal representatives from selling the property, and by divesting them of the title and vesting it in the grantee or those entitled to it under him. (*Wright's Heirs v. Christy's Heirs*, 39 Mo. 125.) But the bill in this case .... asks and the court rendered a judgment for possession, but that is not allowable in a chancery proceeding. That requires a proceeding at law. The documentary evidence of [the respondent's] title having been lost, it is necessary for her in the first instance to establish her title through the aid of chancery, and then she will be in a condition to proceed with a suit for possession.

*Wynn v. Cory*, 43 Mo. 301, 304 (1869). *See also* ***Bohart v. Chamberlain***, 99 Mo. 622, 13 S.W. 85, 86–87 (1890) ("no doubt is entertained that a court of equity would have jurisdiction" over the proceeding to "declare and establish a deed of trust" where it was alleged "that the deed had been executed, but subsequently lost or destroyed").

Here, Bank asserted that because the "Deed of Trust was, and is, lost or destroyed and never placed of record[,]" Bank was "prevented ... from exercising its rights ... under the ... Deed of Trust." Bank sought recognition of the Deed of Trust in order to obtain a judgment quieting title in Homeowners subject to the Deed of Trust. Bank's remedy for its cause of action was not an award of money damages or possession of the Property. Instead, it sought declarations that the Deed of Trust had been lost and that the Deed Copy was a true and authentic copy of the contents of the Deed of Trust. *See* section 527.190.2. The fact that Bank's prayer for relief requested costs and fees incurred in bringing the action and included a general prayer for "such other and further relief" deemed "just and proper" did not convert Bank's equitable action

county in which the land or any part thereof lies, or the record was destroyed, setting forth in said petition a description of said lands, the nature and extent of his, her or their interest or estate therein, and a description of his or her or their deeds, mortgages or other evidence of title, and give the date and contents of said deeds, mortgages or other written evidence of title, and the name or names of the person or persons who executed the same, and the interest therein conveyed to the said claimant, as fully and particularly as said petitioner shall be able.

2. The said petitioner or petitioners shall also set forth in his, her or their petition the manner in which his, her or their deed or deeds, or other evidence of title in and to the lands described in said petition, were lost and destroyed, and praying the said court to hear and make a record of such evidence as the said petitioner or petitioners shall produce, touching or concerning his, her or their alleged estate or interest in and to said lands described in his, her or their petition; and upon hearing such testimony and proof of title as is produced by the said petitioner or petitioners, in support of his, her or their interest and estate in and to said lands described in the said petition, the estate or interest of the said petitioner shall be adjudged and determined by the said court, according to the evidence adduced by the said petitioner or petitioners in support of the estate or interest in which he, she or they may have in and to the said lands described in the said petition, which said petition shall be verified by the affidavit of the petitioner or petitioners, or by the affidavit of some person petitioning in his, her or their behalf.

into one at law subject to a demand for jury trial. *Cf. Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 185 n.2 (Mo. App. W.D. 2012) ("the prayer for relief in a lawsuit is not a separate cause of action"). Point 3 is denied.

### Points 5, 6, and 7—Admission of Photocopied Documents

■■■ Points 5, 6, and 7 collectively claim that the trial court abused its discretion in admitting the Pooling Copy, the Note Copy, and Exhibit 5, which included the Affidavit Copy and the Deed Copy. We group the points together for analysis because they all challenge the admission of photocopied documents as evidence, and each point asserts that the trial was "materially affected" in some way by a "legally false impression[.]" We do not need to decide whether the trial court erred in admitting any of these documents because Homeowners have failed to demonstrate in their briefing that it was reasonably likely that the exhibits had a prejudicial impact upon the outcome of the case. *See Teasdale*, 373 S.W.3d at 24.

Point 5 contends that the admission of the Pooling Agreement was in violation of the best evidence rule, and Homeowners were prejudiced by the ruling "because it conveyed to the fact-finders the legally false impression that under the law a photocopy is just as good as an original." Point 6 contends the Note Copy was erroneously admitted because it had not been authenticated before its admission and this "conveyed the legally false impression that a person's signature on a document does not need to be authenticated prior to the document's admission into evidence."

Point 7 asserts error in admitting Exhibit 5 based upon the following multiple reasons.

Exhibit 5: (A) was not properly identified and authenticated in that the record contains no testimony identifying the [Affidavit Copy] and authenticating the signatures on the [Deed Copy]; (B) was inadmissible hearsay in that the [Affidavit Copy] was an out-of-court statement offered for its truth; (C) was inadmissible under the best evidence rule, and (D) there was insufficient foundation for Exhibit 5's admission as secondary evidence under the best evidence rule in that Exhibit 5 was a photocopy and it was not established prior to Exhibit 5's admission (i) that the original [Lost Deed A]ffidavit was unavailable, that its unavailability was not [Bank's] fault, and that the [Affidavit Copy] was trustworthy; (ii) that the original [D]eed of [T]rust was lost, destroyed, was outside the jurisdiction, was in the possession or control of an adversary, or was other [sic] unavailable through no fault of [Bank]; (iii) that the original of the [D]eed of [T]rust was unavailable, that its unavailability was not the proponent's fault, and that the [Deed Copy] was trustworthy[.]

The prejudice resulting from all of these alleged errors is identified as "convey[ing] the legally false impression that the trial court believed that long standing, well-settled rules of evidence simply don't matter."

■■■ Point 5's argument acknowledges the statement in *Stokes v. Nat'l Presto Indus., Inc.*, 168 S.W.3d 481, 483 (Mo. App. W.D. 2005), that "[e]ven if the circuit court abuses its discretion in excluding the evidence, we should not reverse the circuit court's judgment unless the abuse had a material effect on the trial." Although Homeowners claim that conveying the impression "that under the law a photocopy of a document is just as good as an original" is a material effect (as opposed to a legal error), they cite no authority supporting that claim. More importantly, they

do not articulate how it was reasonably probable that the jury's consideration of the Pooling Agreement, which addressed Bank's guidelines for managing the Loan—along with other loans, "affected the outcome of the trial[,]" *Teasdale*, 373 S.W.3d at 24, when considered in light of other testimony from Mr. Reyes regarding Bank's interest in the case. Merely alleging prejudice in the brief without "explain[ing] how the evidence affected the outcome" is not enough to show that the evidence had a material effect on the merits. *Garrett v. Overland Garage & Parts, Inc.*, 882 S.W.2d 188, 192 (Mo. App. E.D. 1994). Point 5 is denied.

The argument for Point 6 strays even further from demonstrating a material effect on the outcome of the trial because it says *nothing* about how admission of the Note Copy caused any prejudice.[11] Point 6 is denied.

The argument supporting Point 7 errs in the opposite direction—expanding beyond "the legally false impression" prejudice claim in the point to add additional ways in which Homeowners were allegedly prejudiced by the admission of the Lost Deed Affidavit Copy and the Deed Copy:

> (1) the trial court erroneously believed and gave the jury the legally erroneous impression that photocopies and out[-]of[-]court statements are as good as originals and sworn in[-]court testimony; (2) that long-held rules of evidence simply did not apply in the [trial court]; (3) that the trial court erroneously believed and gave the jury the legally erroneous impression that if a

document is signed, it is signed by the person charged with signing it.

In addition to those three, the argument later adds: (4) admitting the Lost Deed Affidavit Copy and the Deed Copy "without proper foundation evidence . . . materially affected the outcome of the trial by shifting the burden of proof to [Homeowners] to prove that the [Deed of Trust] was not authentic and did not bear their signatures."

Even if we did not treat all of these additional claims as unpreserved for review, *see St. Louis Cty. v. Heiman*, 441 S.W.3d 160, 162 n.4 (Mo. App. E.D. 2014), there is no showing that the fact-finder was reasonably likely to conclude that the notions asserted by Homeowners were material to the judgment, especially in view of the other evidence in the case. In other words, Homeowners provide no discussion under Point 7 of what the admission of the Affidavit Copy and the Deed Copy did to establish Bank's case that could not have been established without the admission of those documents. Point 7 is denied.

### *Point 9—Evidence Supporting the Judgment*

 Homeowners' ninth point improperly asserts both a substantial-evidence challenge and an against-the-weight-of-the-evidence challenge. Such distinct challenges "must appear in separate points relied on in the appellant's brief to be preserved for appellate review." *Ivie v. Smith*, 439 S.W.3d 189, 199 n.11 (Mo. banc 2014). And although we may review the

---

11. Even if we did not deem the point's prejudice claim abandoned, *see Citizens for Ground Water Prot. v. Porter*, 275 S.W.3d 329, 348 (Mo. App. S.D. 2008), nothing in the point or argument convinces us of any effect on the trial's outcome by virtue of the admission of the Note Copy. For instance, there is no analysis of the impact of the forensic docu-

ment examiner's testimony regarding her comparison of Mr. Pyle's signature on a discovery document with his signature on the Adjustable Rate Note, and we may not scour the record for support of the claim in order to overcome the vacuum created by the inadequate point and argument. *Id.*

separate merits of such a combined point *ex gratia*, we will not review the against-the-weight-of-the-evidence challenge in this case because the argument supporting the point says nothing about the claim beyond including the same phraseology in the final sentence of the argument. *See Houston v. Crider*, 317 S.W.3d 178, 186–87 (Mo. App. S.D. 2010) (describing the "distinct analytical framework" for an against-the-weight challenge). We therefore deem this contention abandoned. *See Porter*, 275 S.W.3d at 348.

"To prevail on the substantial-evidence challenge, [the appellant] must demonstrate that there is no evidence in the record tending to prove a fact that is necessary to sustain the circuit court's judgment as a matter of law." *Ivie*, 439 S.W.3d at 200. To make this demonstration, the appellant must:

(1) identify a challenged factual proposition, the existence of which is necessary to sustain the judgment;

(2) identify all of the favorable evidence in the record supporting the existence of that proposition; and,

(3) demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

*Houston*, 317 S.W.3d at 187.

Here, Point 9 identifies the factual proposition as whether the Deed Copy was " 'a true, accurate, and authentic copy of the original' " Deed of Trust. The point asserts

"that there was no competent evidence in the record" supporting this proposition. The argument insists that "[t]he only evidence in support of said finding was [the Affidavit Copy]—which was inadmissible hearsay"[12] and maintains that the Deed Copy was inadmissible for violating the best evidence rule. Because Homeowners misapply the best evidence rule, and they fail to summarize the other evidence supporting the finding that the Deed Copy is a true and accurate copy of the Deed of Trust, their argument has no analytical value.

Regarding the best evidence rule, "it must be kept in mind that the rule does not operate to *exclude* secondary evidence in all instances, but only to *prefer* primary evidence (the original document) over secondary evidence." *Aviation Enter., Inc. v. Cline*, 395 S.W.2d 306, 308 (Mo. K.C.D. App. 1965) (emphasis added). Thus, an original instrument is preferred evidence of the instrument, but secondary evidence may still be admitted and the fact-finder may determine its worth. *Cf. Briggs v. Henderson*, 49 Mo. 531, 533–35 (1872) (observing "[t]he best in the power of the party should be given; but when it is shown that primary evidence is impossible, then secondary is admissible, and down to the lowest degree of secondary evidence").

Thus, "under certain circumstances a photocopy may be admitted as secondary evidence. This occurs if the offering party demonstrates that the primary evidence, e.g., the original copy of a document, is lost or destroyed ... or is otherwise unavailable or inaccessible." *Wheelhouse Marina Real Estate, L.L.C. v. Bommarito*, 284 S.W.3d 761, 768 (Mo.

---

12. Homeowners do not develop the significance of this allegation in the context that the Advantage records were admitted without objection. *See Mo. Land Dev. I, LLC v. Raleigh Dev., LLC*, 407 S.W.3d 676, 689 (Mo. App.

E.D. 2013) ("party cannot be prejudiced by" evidence alleged to be inadmissible hearsay "if the challenged evidence is merely cumulative to other admitted evidence of like tenor").

App. S.D. 2009). "A photocopy as secondary evidence is admissible if there is a foundation showing that: (1) the original is unavailable, (2) the unavailability is not the proponent's fault, and (3) the secondary evidence is trustworthy." *Ousley v. Casada*, 985 S.W.2d 757, 758 (Mo. banc 1999) (quotation omitted).

Homeowners rely on *Boroughf v. Bank of Am., N.A.*, 159 S.W.3d 498, 504 (Mo. App. S.D. 2005), to suggest that the Deed Copy was inadmissible because a witness did not testify that the Deed of Trust was compared to the Deed Copy and the former was observed to be a correct copy of the latter. It is true that a photocopy was held inadmissible where there was no testimony comparing the copy with the original in *Boroughf, id.*, but, in that case, "[t]here was no evidence presented showing that the original to the ... photocopy was lost[,]" and the proponent did not try to show that the original document was "outside the jurisdiction or otherwise unavailable or inaccessible." *Id.* at 503.

Here, Bank did allege that the Deed of Trust had been lost, and it sought to have its interest in the Property declared based upon the Lost Deed Law, which requires the petitioner to describe the lost deed "as fully and particularly as said petitioner shall be able." Section 527.190.1. It would beg the question in such cases to require production of the lost deed itself, and to require a witness to testify that he had compared the copy to the original is not a requirement of the statute. Indeed, oral testimony alone has been accepted as secondary evidence in such a case. *Cf. Dollarhide v. Parks*, 92 Mo. 178, 5 S.W. 3, 5 (1887) (testimony regarding execution, contents, and loss of amended deed in a cyclone "fully and satisfactorily answers the objection" that the recorded deed "was the best evidence of its contents"). "The purpose of the best evidence rule, after all, is to secure the most reliable information available when the contents of a writing are in dispute. The rule does not require the exclusion of all possible evidence to satisfy this purpose." *Weber v. Knackstedt*, 707 S.W.2d 800, 803 (Mo. App. E.D. 1986).

At the time the Deed Copy was offered as evidence, Advantage's records had not been admitted, but the trial court had heard testimony from Mr. Reyes about Bank's documents. Mr. Reyes testified that the file for the Loan did not contain the Deed of Trust when Bank received it. Instead, Bank was "delivered a photocopy of ... the mortgage[,]" only, and then in March 2006, it received "the certified copy of the deed of trust .... [t]hat had been recorded in the county[.]" Mr. Reyes identified the Deed Copy and the Affidavit Copy as pertaining to the Property. He testified that the Deed Copy had an execution date of May 17, 2005, it reflected the purported signatures of Homeowners, and its terms matched other information consistent with the Adjustable Rate Note, including the same notary information. Based on this evidence, the trial court did not abuse its discretion in concluding, for purposes of admitting the Deed Copy into evidence, that Bank was not in possession of the Deed of Trust; Bank was not at fault for its inability to introduce the Deed of Trust into evidence; and the Deed Copy was sufficiently trustworthy to be admitted.

In addition to the Deed Copy itself, and even apart from the lost mortgage affidavit, other evidence in the record supported a finding that the Deed Copy was a true, correct and authentic copy of the Deed of Trust, including the forensic document examiner's testimony that Homeowners' signatures on the Deed Copy were genuine and authentic. Instead of describing this favorable evidence in the record as required by *Houston*, 317 S.W.3d at 187, Homeowners argue only

what they regard as evidence supporting the opposite conclusion. An argument that focuses on contrary proof is irrelevant in determining whether substantial evidence supports the judgment. *Smith v. Great Am. Assur. Co.*, 436 S.W.3d 700, 705 (Mo. App. S.D. 2014). By failing to comply with the second step of a proper substantial-evidence challenge, Homeowners "doom their ability to satisfy the last step[.]" *Houston*, 317 S.W.3d at 188. Point 9 is denied.

### Points 1, 2, and 4—Homeowners' Section 514.205 Claims

 Homeowners' first point claims that the dismissal of HCC 1 was erroneous because section 514.205 provides "a statutory cause of action for damages" suffered by Homeowners in opposing Bank's "frivolous causes, pleadings, motions, defenses and proceedings." Point 2 asserts that the dismissal of HCC 1 denied Homeowners' "constitutional right to a trial by jury on all statutory actions for damages." Point 4 maintains that overruling the frivolous-suit motion was also erroneous because section 514.205 "expressly require[s] that the [trial c]ourt hold a hearing on" such a motion. Homeowners cannot succeed on these allegations of error because they do not adequately develop the issues raised so as to demonstrate that a reversal is required.

Section 514.205.1 provides:

In any civil action or part of a civil action pending before any division of any court of this state including the probate division of the circuit court, if the court finds after a hearing for such purpose that the cause was initiated, or a defense was asserted, or a motion was filed, or any proceeding therein was had frivolously and in bad faith, the court shall require the party who initiated such cause, asserted such defense, filed such motion, or caused such proceeding to be had to pay the other party named in such action the amount of the costs attributable thereto and the reasonable expenses incurred by the party opposing such cause, defense, motion, or proceeding, including reasonable attorney's fees and compensation of said party for the time reasonably required of the party to oppose such cause, defense, motion or proceeding. Nothing in this section shall be construed as creating any liability on the part of any attorney representing a party in the proceeding who in good faith acted at the specific direction of his client in initiating the case, asserting the defense, filing the motion, or causing the proceeding to be had.

Here, while Point 1 generally suggests that Homeowners had "a statutory cause of action" for damages incurred in "oppos[ing Bank's] frivolous causes, pleadings, motions, defenses and proceedings[,]" the point fails to "explain in summary fashion why, *in the context of the case*, [the] legal reasons [identified in the point] support the claim of *reversible* error." Rule 84.04(d)(1)(C) (emphasis added). In other words, the point does not contend that Homeowners *adequately set forth* a cause of action in this case such that it would be error to dismiss HCC 1. It simply characterizes Bank's causes, motions, defenses, and proceedings as being frivolous without explaining why that is so. Point 2 suffers from a similar problem in that it does not maintain that Homeowners actually set forth a cause of action based on HCC 1 that would entitle them to a jury trial. Likewise, point 4 contends that Homeowners were entitled to a hearing on the frivolous-suit motion, but it makes no contention that a proper basis for relief under section 514.205 had been alleged in that motion.

 We prefer to review a point on the merits despite deficiencies in the briefing where such review is not impeded by the deficiencies. *See Grauberger v. Atlas Van Lines, Inc.*, 419 S.W.3d 795, 800 (Mo.

App. S.D. 2013). However, the argument supporting a point should still inform the court "how the facts of the case and the principles of law interact." *First State Bank of St. Charles v. Am. Family Mut. Ins. Co.*, 277 S.W.3d 749, 753 (Mo. App. E.D. 2008). An appellant's brief must set forth the elements of the claim it contends was erroneously rejected, *and* it must also link those elements with the factual averments alleged in the claim. *See Hall v. Podleski*, 355 S.W.3d 570, 577 (Mo. App. S.D. 2011). The failure to do so means that the appellant has failed to meet its burden on appeal to demonstrate error that requires a reversal of the judgment. *See id.* at 574 and 577.

Here, Homeowners' arguments supporting points 1, 2, and 4 together contend that section 514.205 creates a cause of action with: 1) the right to a jury trial; and 2) the right to a hearing on a "[section] 514.205 RSMo. Motion[.]" Despite these assertions, Homeowners do not contend that they adequately alleged facts in either HCC 1 or the frivolous-suit motion that would state a claim for sanctions under section 514.205. *Cf. Gardner v. Bank of Am., N.A.*, 466 S.W.3d 642, 649 (Mo. App. E.D. 2015) (point challenging dismissal of claims for failure to plead them with particularity was dismissed on appeal because "[a]ppellants' argument d[id] not explain how the facts pleaded in the [s]econd [a]mended [p]etition satisf[ied] the elements required to plead a cause of action for fraud and conspiracy to defraud against these respondents").

The argument supporting Point 1 does not contend that the facts alleged in HCC 1 met the requirements of section 514.205. The argument supporting Point 2 simply includes the statement that HCC 1 "pleaded the elements of statute" without any citation to the record and without any discussion of the factual allegations. The argument supporting Point 4 contends that Homeowners were entitled to a hearing simply because they filed the frivolous-suit motion and cites cases suggesting that a hearing should be held *before* sanctions *are* imposed.[13] Homeowners do not contend that the frivolous-suit motion satisfied the requirements of a motion under section 514.205, and they do not address how consideration of the frivolous-suit motion differed from the trial court's consideration of whether to dismiss HCC 1 after hearing from counsel on the matter at trial. As a result, Homeowners have failed to satisfy their burden on appeal to demonstrate error requiring a reversal based upon the dismissal of HCC 1 and the denial of the frivolous-suit motion.

Points 1, 2, and 4 are also denied, and the judgment of the trial court is affirmed.

JEFFREY W. BATES, P.J.— CONCURS

MARY W. SHEFFIELD, C.J.— CONCURS

13. *See Perkel v. Stringfellow*, 19 S.W.3d 141, 148 (Mo. App. S.D. 2000) (requirements of section 514.205 not followed in awarding attorney fees as a sanction, including a hearing on the appropriateness of sanctions); *D.S.P. v. R.E.P.*, 800 S.W.2d 766, 771 (Mo. App. S.D. 1990) (improper to award sanctions against a party without allowing the party to be heard and to cross-examine witnesses); *W.E.F. v. C.J.F.*, 793 S.W.2d 446, 453–54 (Mo. App. E.D. 1990) ("[t]o make such an award, a court must (1) conduct a hearing, (2) make a finding that the pleading or proceeding 'was had frivolously and in bad faith,' and (3) assess an amount[,]" but it was not an abuse of discretion to deny a previously-filed motion for sanctions that was mentioned during a subsequent hearing on a new trial where no evidence was offered on the issue of sanctions and the issue was not argued).