

# Missouri Court of Appeals

## Southern District

### Division One

JULIE N. MAY,                                      )
                                                   )
    Claimant-Respondent,        )
                                                   )
    vs.                         )    No. SD36638
                                                   )
GOLDEN PARTNERS, INC.,                             )    **Filed:  October 13, 2020**
                                                   )
    Employer-Appellant,         )
                                                   )
and MISSOURI DIVISION OF                           )
EMPLOYMENT SECURITY,                               )
                                                   )
    Respondent.                 )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### **AFFIRMED**

Julie N. May ("Respondent") received unemployment benefits when the Labor and Industrial Relations Commission ("the Commission") found that she was involuntarily terminated **without misconduct** from her employment with Golden Partners, Inc. ("Appellant").  Appellant claims in Point I:

> The Labor and Industrial Relations Commission erred in finding that Claimant May was discharged by Golden Partners, because the facts found by the Commission do not support the award pursuant to § 288.210, and Claimant May twice did not comply with the requirements of § 288.050.1(1)(d), in that Claimant May was on medical leave relating to her

1

pregnancy, was released by her doctor to return to work on March 12, 2019, but failed to return to work as soon as she was physically able, and then failed to provide competent medical proof that she was forced to leave work on March 21, 2019.

In Point II, Appellant claims:

The Labor and Industrial Relations Commission erred in finding that Claimant May was discharged by Golden Partners, because there was no sufficient competent evidence in the record to warrant the making of the award pursuant to § 288.210, in that the Commission's factual findings are against the overwhelming weight of the evidence as Claimant May sought to take an extended maternity leave, did not comply with the Employee Handbook, did not communicate with her General Manager or any of the Assistant Managers, and did not follow the same procedure she and other employees previously followed regarding maternity leave.

We disagree with both contentions and affirm the judgment.

For ease of discussion, we will begin with the second point. Point II appears to challenge both the weight of the evidence and that there was not sufficient evidence to warrant the making of the award. It is clear that this point does not comply with Rule 84.04[1] in that it raises two entirely separate judicial concepts. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 630 n.10 (Mo. banc 2014). As admitted by Appellant, there is not a review process in this type of case for an against the weight of the evidence challenge. Because Appellant appears to argue in its second point and Respondent replied to the opening argument as a challenge to whether there is sufficient competent evidence to support the award, we will address that issue.

We review the findings of the Commission. *McGuire v. Christian County*, 442 S.W.3d 117, 122 (Mo.App. S.D. 2014). The Commission found:

[Respondent] worked for [Appellant] as a server for periods of time since at least 2016. Her last day worked was March 12, 2019. [Respondent's] hours varied, and her last rate of pay was $4.30 per hour plus gratuities. Sometime in June, [Appellant's] manager decided to

---

[1] All references to rules are to Missousri Court Rules (2020), unless otherwise specified.

2

terminate [Respondent's] employment status in the system. He chose the date of April 17, 2019, and made the termination retroactive. When asked why that date – he said "no rhyme or reason to that date." . . . No one from [Appellant] notified [Respondent] that she was terminated. [Appellant's] position was that [Respondent] voluntarily quit by abandoning the job. [Respondent] indicated she did not intend to quit her job. [Respondent] had informed her team lead, who was responsible for scheduling, that as of March 21, 2019, after being off due to medical issues with her pregnancy, that she was going to begin her pregnancy leave period. The team lead indicated [Respondent] merely had to let her know when she was ready to return.

[Appellant] had an informal approach regarding such leaves. The team leader, who testified, indicated that she had made such informal agreements, to take workers off the schedule indefinitely in the past; and that she had personally take . . . six months off and informally notified the manager she was ready to return. [Appellant] did not address details of any policies or requirements that [Respondent] had failed to comply with before announcing she was on pregnancy leave. [Respondent] had been put on restriction by her doctor that she could not work any more than 3.5 hours once a week. Based on the information in the record, we note that unless [Respondent] earned gratuities during her shift duties, her rate of pay for this short shift would have been $15.05.

The birth of [Respondent's] child was on July 6, 2019. [Respondent] continued to maintain contact during this time with the team lead, whom she considered a friend. [Respondent] did not find out until August, 2019, that she had been terminated in [Appellant's] system. Claimant renewed her unemployment claim effective August 11, 2019.

We note that the referee found [Appellant's] version of events more persuasive, citing support for its position in its business records. However, we find the business records to be in conflict with the testimony provided by [Appellant] and [Respondent] regarding how those policies were implemented in practice. Therefore, we do not find [Appellant's] version of events more persuasive. The text messages between [Respondent] and the team lead appear to be the most significant pieces of evidence between [Appellant's] representative and [Respondent] about her status. There is no evidence that [Appellant] notified [Respondent] that there were any additional requirements for her to fulfill in order to validly be considered on pregnancy leave.

To summarize, the Commission found that Appellant had an informal leave policy allowing for extended leave for pregnancy and a six-month leave was not uncommon. Likewise, the Commission found that Respondent had testified she did not intend to quit, that she had not abandoned the job. Further, Respondent continued to have contact with

Appellant about obtaining hours though she was not put on the schedule. The Commission noted she did not seek unemployment benefits until after she was told she was discharged. No one notified Respondent that she was terminated until August of 2019, although Appellant predated the termination to April 2019 for "no rhyme or reason."

To counter the evidence as cited by the Commission, Appellant dwells upon the requirements of subsection 288.050.1(1)(d), that a person is disqualified from receiving benefits if they **voluntarily** leave work without good cause. As just stated, the Commission found Respondent did not leave work until she was discharged. Appellant appears to be laboring under the assumption that taking an extended period of time for a pregnancy or birth is forbidden under section 288.050.1(1)(d), that employers may not allow employees extended pregnancy leave. Such is not the case and such is not the finding of the Commission.

In determining whether the facts as found by the Commission are sufficient, we start with Appellant's informal approach to its leave policy. There was evidence that although Respondent did not provide any documented medical proof that she was forced to leave work due to pregnancy, "there was nothing in the actions of [Appellant] that would have prompted [Respondent] to seek any additional medical documentation to support her leave." Respondent was not put on the schedule nor did she fail to show up for a shift. Respondent was in contact with Appellant's representative about her work schedule. Even the predating of the discharge notice indicates Respondent was not discharged in response to any failure of Respondent to perform her job. As such, the Commission found that she was discharged in June and did not voluntarily quit her job in

4

March, that she intended to return, and there was no allegation of misconduct. There was sufficient competent evidence to support the finding that Respondent was discharged rather than quit her job. The statute that Appellant relies on did not come into play. Point II is denied.[2]

Turning to Point I, Appellant claims the facts as found by the Commission do not support a finding that Respondent was discharged. Appellant arrives at that conclusion by providing other facts that would support a finding that Respondent voluntarily left her employment and again focuses on section 288.050.1(1)(d) to claim that the failure to provide documented medical proof that she was forced to leave work due to pregnancy prohibits any relief to Respondent. Again, Appellant does not show how the *facts as found by the Commission* do not support the award. Appellant does not provide facts that "identify a challenged factual proposition," "identify all of the favorable evidence in the

---

[2] Point II would fail anyway. "Review of the Commission's decision under the Employment Security Law is the same as review of a decision under the Workers' Compensation Law." ***Reno v. Tyson Poultry, Inc.***, 204 S.W.3d 347, 350 (Mo.App. W.D. 2006). Therefore, as in workers' compensation, our standard of review required Appellant to assert evidentiary-based challenges via the ***Houston v. Crider*** protocol. *See* ***Parvin v. Camcorp Environmental, LLC***, 597 S.W.3d 357, 360-61 & n.3 (Mo.App. S.D. 2020) (citing ***Houston v. Crider***, 317 S.W.3d 178, 186-87 (Mo.App. S.D. 2010) and collecting ten workers' compensation cases so holding). "Any suggestion that [***Houston***'s] formula does not apply in cases challenging the Commission's award as not supported by sufficient competent evidence is incorrect as a matter of law." ***Id.*** (internal citation and quotation marks omitted).

   ***Houston***'s application generally – not to Industrial Commission appeals alone – is no secret. *See, e.g.,* ***Taney Co. Title & Escrow v. Jensen***, 600 S.W.3d 16, 28 (Mo.App. S.D. 2020) (real estate contract); ***Biggs by Next Friend Biggs v. Brinneman***, 598 S.W.3d 697, 702 n.8 (Mo.App. S.D. 2020) (paternity); ***Missouri Ozarks Radio, Network, Inc. v. Baugh***, 598 S.W.3d 154, 170 (Mo.App. S.D. 2020) (conversion); ***Lazarus v. Jacob***, 597 S.W.3d 389, 395 (Mo.App. S.D. 2020) (fraudulent transfer); ***Interest of S.S.***, 595 S.W.3d 584, 587 (Mo.App. S.D. 2020) (termination of parental rights); ***Taylor v. Taylor***, 585 S.W.3d 390, 394 (Mo.App. S.D. 2019) (partnership); ***Estate of Elder v. Estate of Pageler***, 564 S.W.3d 742, 748 (Mo.App. S.D. 2018) (probate); ***Ward v. Dennis Oil Co.***, 560 S.W.3d 38, 41-42 (Mo.App. S.D. 2018) (sales commissions); ***Kim v. Mercy Clinic Springfield Communities***, 556 S.W.3d 613, 617 & n.2 (Mo.App. S.D. 2018) (constructive discharge and unjust enrichment); ***Parker v. Doe Run Co.***, 553 S.W.3d 356, 359-60 (Mo.App. S.D. 2018) (tax assessment); ***Deutsche Bank Nat'l Trust Co. v. Pyle***, 518 S.W.3d 805, 820 (Mo.App. S.D. 2017) (quiet title); ***Massey v. Massey***, 464 S.W.3d 577, 580, 587-93 (Mo.App. S.D. 2015) (trust amendment); ***In re Estate of L.G.T.***, 442 S.W.3d 96, 116 (Mo.App. S.D. 2014) (guardianship); ***Welman v. Parker***, 391 S.W.3d 477, 484-85 (Mo.App. S.D. 2013) (accounting). As in those situations, ignoring ***Houston***'s framework robs Appellant's Point II arguments of any analytical or persuasive value. ***Doe Run Co. v. Fenwick***, 599 S.W.3d 906, 908 (Mo.App. S.D. 2020).

record supporting the existence of that proposition," and "demonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition." *Houston*, 317 S.W.3d at 186-87. As we have stated in our analysis of Point II, there was sufficient competent evidence to support a finding of a discharge instead of a voluntary leaving of work. Appellant has not demonstrated why the evidence favorable to the Commission does not have probative force upon the proposition that the trier of fact could not reasonably decide the existence of the proposition that Respondent was discharged without misconduct. Point I is denied.

The judgment is affirmed.


Nancy Steffen Rahmeyer, P.J. – Opinion Author

Daniel E. Scott, J. – Concurs

William W. Francis, Jr., J. – Concurs

6